IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| TRUSTEES OF THE I.B.E.W. LOCAL UNION 405 DEFERRED SAVINGS FUND and TRUSTEES OF THE I.B.E.W. LOCAL UNION 405 HEALTH AND WELFARE FUND, | |
| Plaintiffs, | No. C02-0048 |
| vs. | **ORDER** |
| DUBALL ELECTRIC, INC., JERRY DUBALL, SR., JERRY DUBALL, JR., KAY DUBALL, and TAMARA WYNN, | |
| Defendants. | |
| DUBALL ELECTRIC, INC., | |
| Third-Party Plaintiff, | |
| vs. | |
| ELECTRICAL WORKERS I.B.E.W. AFL-CIO, LOCAL UNION 405, | |
| Third-Party Defendant. | |

This matter comes before the court pursuant to the plaintiffs' December 27, 2005 motion for attorney fees and bill of costs (docket numbers 204 and 203 respectively). The plaintiffs' motion for attorney fees and costs (docket numbers 203 and 204) are granted as set forth in this Order.

### Attorney Fees

By Order dated December 13, 2005, the court issued an Opinion finding that Defendant Duball Electric, Incorporated, owed delinquent contributions to two employee

1

benefit funds, Plaintiff Local 405 Deferred Savings Fund (Plaintiff Pension Fund) and Plaintiff Local 405 Health and Welfare Fund (Plaintiff Health Fund), pursuant to Sections 302(c)(5) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186(c)(5), §§ 502(a)(2)(3) and 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132(a)(2), 1132(a)(3), and 1145 (docket number 201). By Order dated March 9, 2006, the court found in favor of the plaintiffs on their ERISA claim against the defendant in the amount of $33,469.96. The plaintiffs filed the pending motion for attorney fees and bill of costs on December 27, 2005 (docket numbers 203 and 204).

29 U.S.C.A. § 1132(g)(2), provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan–
>
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of–
>   (i) interest on the unpaid contributions, or
>   (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

The attorney fee award is usually calculated by multiplying the reasonable number of hours spent on the litigation by a reasonable hourly rate. This is known as the "lodestar" method. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Jensen v. Clarke, 94 F.3d 1191, 1203 (8th Cir. 1996); Casey v. City of Cabool, 12 F.3d 799, 805 (8th Cir. 1993). In determining the reasonable number of hours spent on the litigation, unnecessary

or redundant hours are excluded. The United States Supreme Court, in <u>Hensley v. Eckerhart</u>, set forth 12 factors to help guide courts in determining the lodestar. Those factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. <u>Hensley</u>, 461 U.S. at 429-30 & n3.

The plaintiffs seek a total fees and expenses award of $92,352.39. The plaintiffs are represented by Joseph Day and Yara El-Farhan Halloush.[1] During their representation of the plaintiffs, attorneys Day and Halloush spent 684.43 hours on the plaintiffs' case and claim $85,933.50 in fees. Attorney Day requests an hourly fee rate of $150.00, Attorney Halloush requests an hourly fee rate of $120.00[2], and Attorney Johansen requests an hourly fee rate of $150.00.

In support of their motion for attorney fees, the plaintiffs assert that the amount requested is reasonable because (1) "the claim for fees covers a time period of approximately three years and nine months," during which there were changes in counsel, the addition of a third-Party Defendant, motions for summary judgment "at various stages," and requests for extensions that were "repeatedly requested" and granted by the court; (2) the final ruling in this matter vindicates the plaintiffs' position that contributions were due and owing to the funds; (3) many of the plaintiffs' pleadings were filed as

---

[1] The plaintiffs were also represented by attorney Kay Johansen until Ms. Johansen departed from the Day, Rettig, Peiffer law firm in approximately May, 2003.

[2] Attorney Halloush requests an hourly rate of $75.00 for some of the trial preparation work in this case in an "effort to control the fees in this case."

3

necessary responses to the "numerous motions filed by and on behalf of the [d]efendants"; and (4) the fee amounts requested are reasonable based on the experience of the attorneys and the complexity of this case.

The defendant resists the plaintiffs' motion for attorney fees. Specifically, the defendant argues that (1) the plaintiffs are only entitled to fees incurred in pursuit of the ERISA claims against the defendant, not for fees incurred in pursuit of the RICO claims or individual liability claims against the defendants; (2) the plaintiffs' fee request is unreasonable because the fees incurred are so grossly disproportionate to the amount of delinquent contributions awarded; and (3) the plaintiffs' fee request is unreasonable because "nearly 88% of the fees incurred were incurred after [the defendant] made a substantial settlement offer to [the plaintiffs]." The defendant further argues that the court should make the following specific reductions to the plaintiffs' fee request:

> (1) The court should not award fees to the plaintiffs for their pursuit of claims against the individual defendants, which were ultimately dismissed at summary judgment;
>
> (2) The plaintiffs should not receive fees for work "not taken on behalf of the trustees," including all work associated with defending against, and ultimately getting dismissed, the defendant's third party complaint;[3]
>
> (3) The plaintiffs should not receive fees associated with the plaintiffs' "unreasonable continued reliance upon the Heller audit report," as the plaintiffs were on notice concerning this

---

[3] The defendant also categorizes the following as work not taken on behalf of the trustees: (1) conversations and conferences with Tom Shea before and after the third party complaint was filed; (2) a conversation with Defendant Duball, Jr. concerning his request to withdraw his pension account; and (3) a discussion concerning whether counsel for the plaintiffs could begin representing Local 405 upon the defendant's filing of the third party complaint and in response to the defendant's argument that Local 405 should retain other counsel.

court's "expectation with regard to how [the plaintiffs] would need to meet their burden of proof in this matter";[4]

(4) The court should not award fees to the plaintiffs for their pursuit of the RICO claims, which were ultimately dismissed at summary judgment;

(5) The plaintiffs should not receive fees for time spent researching a possible Iowa Wage Payment Collection Action.[5]

(6) The court should reduce the plaintiffs' award by $360.00 for miscellaneous errors including duplication;

(7) The plaintiffs should not receive fees for time spent preparing exhibits that were not offered at trial, specifically, preparing summaries of Exhibits 20 and 21, which exhibits were not admitted at trial and which the plaintiffs did not rely upon in post-trial briefing; and

(8) The court should reduce the plaintiffs fee award for "[u]nreasonably paying a lawyer to re-do Heller's audit," specifically by preparing a spreadsheet correcting Heller's errors and setting forth the hours worked by each employee at issue.

The defendant does not take issue with the hourly rates requested by attorneys Day, Halloush, and Johansen. Applying all of the reductions requested by the defendant, the plaintiffs' fee award would total $38,059.50.

---

[4] The defendant cites to <u>Trustees of the I.B.P.A., Local 447 Pension Plan v. Five Seasons Paint & Drywall</u>, 2002 U.S. Dist. LEXIS 21470, *12-13 (N.D. Iowa 2002). In <u>Five Seasons</u>, this court refused to rely upon an audit report similar to the report submitted by the plaintiffs in this case because it was insufficient to meet the plaintiff's burden of showing that the employees at issue had performed work covered by the collective bargaining agreement.

[5] This research represents $120.00 in fees requested under the category of "research."

As both the plaintiffs and the defendant have conceded, this case began as a "simple" action to collect delinquent contributions. Inordinate delays were requested by the parties without objection. When it became apparent that the case would not settle, the parties began the tedious work necessary to resolve the case, but this was very late in the process. The case was also made more complicated than it needed to be. For example, the plaintiffs had no reason to believe that their individual liability or RICO claims against the defendants would ultimately prove successful, yet they pursued these claims through summary judgment. Likewise, the defendant had no substantial reason to believe that its breach of contract claim had any merit, but nevertheless pursued the claim through summary judgment. The acrimony has continued through the post-trial briefing stage, as evidenced by the defendant filing a motion to strike the plaintiffs' reply to the defendant's response to the plaintiffs' amended prayer for relief.[6] While the plaintiffs were ultimately successful on one of their claims, the claim that began this entire course of litigation, it should not have taken four years and hundreds of hours of attorney time to achieve resolution in this matter.

In determining the appropriate fee award in this case, therefore, the court considers the relative success on the merits enjoyed by the plaintiffs. As noted above, the plaintiffs' individual liability and RICO claims were wholly unsuccessful. It is within the court's discretion to reduce the plaintiffs' fee award in accordance with limited success on the merits. See, e.g., H.J. Inc. V. Flygt Corp., 925 F.2d 257, 260-61 (8th Cir. 1991); National Farmers' Organization, Inc. v. Associated Milk Producers, Inc., 850 F.2d 1286, 1312 (8th Cir. 1988); Williams v. Mensey, 785 F.2d 631, 640 (8th Cir. 1986). "Success on the merits is important to a determination of the reasonableness of a fee application," and where "the plaintiff has achieved only limited success, the district court should award

---

[6] The court notes that the plaintiffs then resisted the defendant's motion to strike the plaintiffs' reply to the defendant's response to the plaintiffs' amended prayer for relief.

only that amount of fees that is reasonable in relation to the results obtained." H.J. Inc., 925 F.2d at 260 (citing Hensley v. Eckerhart, 461 U.S. 424, 440 (1983)). The district court, in its discretion, may "either attempt to identify and then eliminate the hours spent on non-compensable claims or may simply reduce the award to account for the plaintiff[s'] limited success." H.J. Inc., 925 F.2d at 260 (citing Hensley, 461 U.S. at 436-37; Roseborough Monument Co. v. Memorial Park Cemetery Ass'n, 736 F.2d 441, 446 (8th Cir. 1984)). The court chooses to apply the latter approach. Viewing the plaintiffs' success in light of the entire course of litigation in this matter, the court finds that a 30% reduction for limited success on the merits is appropriate. Accordingly, the attorney fee award for the legal services provided by counsel for the plaintiffs is $60,153.45.[7]

## Bill of Costs

The plaintiffs seek expenses in the amount of $3,027.50 and costs in the amount of $3,391.39. Specifically, the plaintiffs request reimbursement for the following:

| | |
|---|---:|
| Fees of the Clerk | $150.00 |
| Fees for service of summons and subpoenas | $360.12 |
| Fees for court reporters and depositions | $1,063.53 |
| Witness Fees | $975.54 |
| Copies necessarily used in the case | $842.20 |
| Payment for two temporary staff members at a rate of $10.00 per hour to copy, sort, and categorize paperwork. | $3,027.50 |
| **TOTAL** | **$6,418.89** |

---

[7] Thirty percent of the total fee amount requested, $85,933.50, totals $25,780.05.

The defendant argues that any portion of the fees requested for service of summons on the individual defendants should be disallowed, as the plaintiffs were unsuccessful on their claims against the individual defendants. The defendants further argue that the expenses for depositions should be disallowed because "the only depositions taken in this matter were those of the individual defendants," and the plaintiffs' claim against the individual defendants failed.[8]

The court allows compensation for the two temporary staff members hired by the plaintiffs at a pay rate of $10.00 per hour per employee to copy, sort, and organize the large amount of paperwork in this case. The court notes that rather than having an attorney perform and bill for this time consuming but necessary trial preparation task, the plaintiffs' use of hired outside help at a reasonable pay rate was an efficient choice. Accordingly, the total amount awarded to the plaintiffs for costs and expenses is $6,418.89.

Upon the foregoing,

IT IS ORDERED that the plaintiffs' motions for attorney fees and costs (docket numbers 204 and 203 respectively) are granted as follows: the plaintiffs are awarded attorney fees in the amount of $60,153.45, and costs in the amount of $6,418.89, for a total fee award of $66,572.34. The Clerk of Court shall enter an amended judgment in accordance with this Order.

March 31, 2006.

JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

[8] The court rejects this argument. While the plaintiffs' claim against the individual defendants failed, information gathered by way of deposing the individually named defendants was certainly also relevant to the plaintiffs' claim against the defendant for delinquent contributions.